NATHANIEL P. PRATT *vs.* LEANDER W. LANGDON.

A., having purchased a stock of goods, with fixtures and furniture, and hired the building where the same were situated, agreed with B. that the latter should carry on the business in his own name, pay a certain portion of the purchase money and all the bills, and keep the stock good by new purchases, and that A. might take possession at any time, and, if there should be anything left after paying the bills and the specified portion of the purchase money, the same should be divided equally between them. *Held*, that A. was liable as a partner for debts incurred by B. in carrying on the business.

CONTRACT upon a promissory note for $469.75, dated November 1st 1864, signed Wilson & Langdon, payable to the plaintiff or order; and also upon an account annexed against Wilson & Langdon, for ale, amounting to $403.50. The action was originally brought against Wilson & Langdon, and Wilson was defaulted, and Langdon defended on the ground that he was not a partner of Wilson.

At the trial in the superior court, before *Ames*, J., it appeared that the note was given by Wilson in the absence of Langdon, for goods used at the saloon hereinafter mentioned; and it did not appear that Langdon had any knowledge of the note till some days after it was given. The plaintiff offered evidence tending to show that they were partners.

Langdon testified as follows: "Early in the spring of last year, Wilson told me he wanted to go into business. I was willing to assist him, as I had some money for investment. So I bought out the former proprietor of the saloon, Luddington, for $1300, paying him $1000 down, and giving him my note for

$300. The agreement was, Wilson was to carry on the business in his own name, pay all the bills, and also the $300 note, and keep the stock good in amount by new purchases, and if anything was left after paying the bills and the note, I was to have half. My name was not to be used in the business at all. Business cards were printed at his suggestion, with the name and place of the saloon, and the words ' A. A. Wilson, Proprietor.' I had nothing to do with the business while Wilson was there. There was no limit of time fixed. I never ordered any goods; he had an account against me in his books. I became dissatisfied with him about December, and told him he must quit, which he did, about four weeks after the date of the note." On cross-examination, he said, " I bought of Luddington the fixtures, furniture, and stock on hand, in my own name, and put the whole into Wilson's possession. He was to pay the $300 note and all bills, and was to keep up the stock, by selling out and buying new, so that when it was turned over to me there should be no depreciation. He was to charge the $300 note to me. There was no limitation of time. I supposed I had a right to take possession at any time. I took charge once or twice when Wilson had occasion to be away for a short time ; and used to frequent the saloon as a visitor."

It appeared also, and was not denied, that Langdon hired the saloon, and was accountable for the rent, the monthly bills for which were made out in his name, and usually were paid by Wilson.

The plaintiff requested the court to rule that, on the testimony of Langdon himself, and upon the above facts, it followed as a matter of law that they were liable as copartners. The judge did not so rule, and declined to withdraw the case from the jury, but submitted it to them to decide upon the evidence as a question of fact whether the defendants stood in the relation of partners, giving them certain instructions, which were not objected to, in relation to the subject of partnership and the burden of proof.

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*S. T. Spaulding*, for the plaintiff, cited *Adams Bank* v. *Rice* 2 Allen, 480 ; *Julio* v. *Ingalls*, 1 Allen, 41 ; *Fitch* v. *Harrington*, 13 Gray, 468, and cases cited; *Denny* v. *Cabot*, 6 Met. 91, and cases cited; *Muzzy* v. *Whitney*, 10 Johns. 226.

*C. Delano*, for the defendant. Langdon assisted Wilson by furnishing him with a saloon and stock, which Wilson was to keep good. As security and compensation, Langdon was to receive from Wilson half of what was left after paying all bills. Langdon's name was not to be used in the business. Under these circumstances, the judge rightly left it to the jury, under full instructions on all incidental points, to find whether the relation of partners actually existed. See *Gunnison* v. *Langley*, 3 Allen, 337 ; *Holmes* v. *Old Colony Railroad*, 5 Gray, 58 ; *Bradley* v. *White*, 10 Met. 303 ; *Denny* v. *Cabot*, cited for plaintiff; *Loomis* v. *Marshall*, 12 Conn. 69 ; *Vanderburgh* v. *Hull*, 20 Wend. 70.

CHAPMAN, J. It is conceded that the plaintiff is entitled to recover against both defendants if they were partners as to third persons, and not otherwise. The general principles that govern the case were recently stated in the case of *Fitch* v. *Harrington*, 13 Gray, 468. If both were to participate in the profits of the business as profits, both are liable ; but if Langdon was to receive half the profits as a compensation for what he did for Wilson, without having any specific lien on the profits, he is not liable. Receiving one half of the profits, or one half of the net profits, unless it was to be received as profits, would not make him a partner. *Holmes* v. *Old Colony Railroad*, 5 Gray, 58.

As both parties admit the testimony of Langdon to be correct, nothing remained at the trial but to decide upon the legal effect of the contract as he stated it. This is the duty of the court, and not of the jury. When there is merely evidence tending to prove the terms of an oral contract, the jury should find what the terms were, under instructions. But here there was no dispute as to the terms, and there was no question of fact to be settled.

According to the statement of Langdon, he retained an interest in the stock in trade, so that, when he should choose to

terminate the business, he had a right to take as his own a suffi-
cient amount to make good the stock which was supplied by
him ; and this right applied as well to the goods which Wilson
might purchase in his own name, as to those which were sup-
plied by Langdon.   Out of this stock he had also a right to re-
tain his share of the profits.   The fact that Wilson was to carry
on the business and make the purchases in his own name does
not affect the question of the real interests and rights of the par-
ties.   The business of a partnership is often managed in the
name of one of the partners.   Wilson had also an interest in the
stock, and was entitled to his share of the net profits out of it.
The decisive fact is, that each had a lien on the stock for his
share of the profits.   The jury should have been instructed that
Langdon was liable to third persons as a partner upon his own
statement.                              *Exceptions sustained.*